United States District Court
Southern District of Texas
**ENTERED**
September 16, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEREK HOMER, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-02789 |
| | § | |
| EBELE HOMER, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER ON ATTORNEY'S FEES AND COSTS

Pending before the Court is Petitioner Derek Homer's ("Derek") Motion for Attorney's Fees, Expenses and Costs. (Dkt. 28). Having reviewed the motion, response, and the applicable law, the Motion for Attorney's Fees is **GRANTED in PART and DENIED in PART**. The Court awards Derek **$32,780 for attorney's fees and $5,205.65 for expenses**.

## BACKGROUND

On August 5, 2021, Derek filed an Application for the Return of the Child under the authority of The Convention on the Civil Aspects of International Child Abduction ("Hague Convention") in the 309th Judicial District Court of Harris County, Texas. (Dkt. 6 at 1). Along with the Hague Convention application, he filed an application under 22 U.S.C. § 9001 International Child Abduction Remedies Act ("ICARA") and in the alternative a request pursuant to Chapter 152.301 et. seq. of the Texas Family Code for the

1

Expedited Enforcement. In these pleadings Derek sought enforcement of a court order issued by the Solna District Court of Sweden for the return of his son S.C.H. from his former wife Ebele Homer ("Ebele") who was currently living in the United States.

On August 24, 2021, the state court held a hearing on Derek's applications. Both Derek, Ebele and their respective attorneys were present. The hearing was not completed that day and was set to be reconvened on August 26, 2021. The next day, August 25, 2021, Ebele removed the case to this Court. Although Ebele notified the state court that the case had been removed, on August 26, 2021 the state court reconvened the hearing with all parties and their attorneys present. At the conclusion of the hearing, the state court ordered that Ebele return S.C.H. to Derek.

Ebele filed an Emergency Motion for Stay of State Court Order with the Court. Following a hearing, the Court issued an order granting the relief requested and staying the state court order. Derek then filed another Motion for Expedited Enforcement of Child Custody Determination in this Court, to which Ebele responded. Derek also filed other miscellaneous motions and documents, including a Motion for Entry of Order, Motion to Allow Supplement, and Exhibit Lists. A two-day hearing was held, after which the Court granted the Motion for Expedited Enforcement of Child Custody Determination and ordered that S.C.H. be promptly returned to Sweden with Derek.

Derek subsequently filed the pending motion to recover his attorney's fees, expenses and costs incurred for the return of S.C.H. under the Hague Convention and

2

ICARA in the total amount of **$56,636.21.** (Dkt. 28 at 4).[1] The requested award consists of **$40,437** for Derek's attorney's fees paid to Myres & Associates, PLLC and **$16,198.22** for Derek's costs and expenses in the United States and Sweden. (Dkt. 28 at 4). In support of his motion Derek attached eight exhibits: (1) Unsworn Declaration of Derek Homer, (2) Derek Homer's Travel Expenses, (3) Unsworn Declaration of Vanessa Karlsson, (4) Vanessa Karlsson's Invoice for Legal Fees, (5) Myres & Associates Detailed Statement of Account, (6) Affidavit of Susan Myres, (7) Myres & Associates Family Law Employment Contract, and (8) Susan Myres' Resume. (*See* Dkt. 28).

In her response Ebele globally objects to the requested amounts, arguing that (1) the claimed fees and costs are "patently not reasonable" (Dkt. 30 at 6), (2) "the majority of the actions taken by [Derek's] attorney [in state court after August 20, 2021] were not necessary, given the removal, and were…legally inappropriate" (*Id*.), and (3) the Court does not have jurisdiction to award fees for work undertaken by Derek's attorney who handled the custody proceedings in Sweden (*Id*.). The motion and Ebele's arguments are examined below.

## LAW AND ANALYSIS

ICARA permits a successful petitioner to recover reasonable fees and costs; the provision is consistent with the Hague Convention's overarching goal of deterring wrongful

---

[1] There is a $284 discrepancy between the total amount of attorney's fees and expenses requested in the motion ($56,920.21) and the amount set forth in the exhibits attached to the motion. ($56,636.21). Derek's motion does not include a summary of his calculations and the Court will assume that this discrepancy is due to a mathematical error by Derek. Accordingly for purposes of this motion the Court will consider the total award requested by Derek is $56,636.21.

child abductions and retentions. *See White v. White*, 893 F. Supp. 2d 755, 758 (E.D. Va. 2012) (citation omitted). The statute imposes a duty on this court "to order the payment of necessary expenses and legal fees, subject to a broad caveat denoted by the words, clearly inappropriate." *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (citation and internal quotation marks omitted). Article 26 of the Hague Convention permits a court to award expenses to a prevailing party "where appropriate." Hague Convention, Art. 26. Similarly, ICARA allows for an award of costs, stating in relevant part:

> Any court ordering the return of a child pursuant to an action brought under [ICARA] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22. U.S.C. § 9007(b)(3). These statutes essentially impose two obligations on this court when assessing an award of fees and costs: one petitioner-focused factor and one respondent-focused factor. First, petitioner's expenses must have been "necessary." With respect to the award of attorney's fees, this examination is one the Court is very accustomed to performing and entails a traditional lodestar analysis governed by the *Johnson* factors. *See, e.g., Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Second, the award must not be "clearly inappropriate" in light of respondent's financial circumstances, subjective good faith in his actions, or other equitable circumstances that suggest further diminution is just. *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013).

4

**Recoverable Attorney's Fees, Costs and Expenses**

**A. Necessary Attorney's Fees**

The Court begins by determining whether petitioner's requested attorney's fees were "necessary." The inquiry is guided by the lodestar framework. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Using this framework, a district court first determines the reasonable hourly rate for the attorneys and the number of hours they "reasonably expended" working on the case. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). The party seeking the fee award has the burden of establishing the reasonableness of the number of hours billed. *Saizan*, 448 F.3d at 799. The court then calculates the appropriate "lodestar," the reasonable hourly billing rate for the attorneys multiplied by the number of hours they reasonably expended on the litigation. *Id.*

After calculating the lodestar, a court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in *Johnson*.[2] *Saizan*, 448 F.3d at 800; *Riddle v. Tex-Fin, Inc.*, No. CIV.A. H-08-3121, 2011 WL 1103033, at *5 (S.D. Tex. Mar. 22, 2011). The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the

---

[2] The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

5

lodestar. *Saizan*, 448 F.3d at 800 (noting that applying the same *Johnson* factor during the initial calculation and then again to adjust the lodestar "would be impermissible double counting.") The lodestar is "presumptively reasonable and should only be modified in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Derek's motion requests an award for attorney's fees based on the following hourly rates and hours expended:

### Fee Bill for Myres & Associates, PLLC

| Attorney | Rate | Hours |
|---|---|---|
| Susan Myres | $500 | 57 |
| | $35 | 1.25 |
| Becca Weitz | $300 | 26.75 |
| | $35 | 5.5 |
| Elizabeth Spies | $135 | 28.75 |
| | $35 | 5.5 |
| | **Total** | **124.75** |

(*See* Dkt. 28-5).

### 1. Reasonable Hourly Rate

To establish the reasonable hourly rate for the Derek's attorneys, the Court must consider the attorneys' regular rates as well as the prevailing market rates, which is the rate "prevailing in the community for similar services by lawyers of reasonably comparable

6

skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The relevant community refers to "the judicial district in which the litigation occurred (the Southern District of Texas)." *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 3549483, at *5 (S.D. Tex. June 30, 2016). Evidence of the reasonableness of a proposed hourly rate must include an affidavit of the attorney verifying that the work was performed and information about rates actually billed and paid in similar lawsuits. *Id.* Mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 439 n.15 (1983). However, "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)). The Court may also use its own expertise and judgment to make an independent determination of the value of an attorney's services. *Hilton v. Exec. Self Storage Assoc., Inc.*, No. H-06-2744, 2009 WL 1750121, at *9 (S.D. Tex. June 18, 2009) (citing *Davis v. Bd. of Sch. Comm'rs.*, 526 F.2d 865, 868 (5th Cir. 1976)).

   **Myres**

   Ebele does not contest the hourly rate of $500 for Myres. Myres's affidavit and the legal services agreement with Derek establish that this rate is her customary billing rate for the types of services rendered in this case. This rate is also within the range of prevailing

7

market rates in the Southern District of Texas. *See Jane Roe/Rachel V. Rose v. BCE Tech. Corp.*, No. 4:12-CV-1621, 2014 WL 1322979, at *3 (S.D. Tex. Mar. 28, 2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case.")

Myres has been licensed to practice law in Texas for 40 years. (Dkt. 28-6 at 3). She is the owner of Myres & Associates, PLLC. (Dkt. 28-8 at 1). Myres & Associates, PLLC is a small firm with three licensed attorneys, as well as legal assistants and law clerks. Dkt. 28-7 at 5. Myres has experience in Texas state and federal district court, and she is admitted to practice in the Northern District of Texas, the Fifth Circuit Court of Appeals, and the United States Supreme Court. (Dkt. 28-8 at 1).  She was selected as a Texas Super Lawyer during numerous years and led many family law organizations including the International Academy of Matrimonial Lawyers, the Texas Board of Legal Specialization, and the Houston Bar Association Family Law Section. The Court finds that the hourly rate of $500 per hour is reasonable for a lawyer with Myres's experience, reputation and the complex international aspects of this case.

Ebele does not contest the requested hourly rate of $35 for administrative work Myres performed that is typically performed by a paralegal.  The Court finds that this rate is also reasonable.

8

**Weitz**

Ebele does not contest Derek's requested hourly rate of $300 for Weitz. Myres's affidavit and the legal services agreement with Derek establishes that this is Weitz's customary billing rate for the types of services that she rendered in this case. However, beyond establishing that Weitz is an associate attorney in Myres's law firm, Derek provides no evidence about the number of years that Weitz has been licensed, her experience or any other qualifications. Weitz's resume is not included with the motion. Nevertheless, the Court will take judicial notice of the State Bar of Texas website entry for Weitz. This website establishes that Weitz has been licensed in Texas for over eight years and is a member of the College of the State Bar of Texas.[3] The Court also takes judicial notice of the State Bar of Texas' 2015 Hourly Rate Fact Sheet ("Fact Sheet")[4] in its assessment of the reasonableness of Weitz's hourly rate. According to the Fact Sheet, the median hourly rate for a Houston family law attorney was $260 per hour. The Court finds that the hourly rate of $300 per hour is reasonable for a lawyer with Weitz's experience and the complex international aspects of this case. *See Jane Roe/Rachel V. Rose v. BCE Tech. Corp.*, No. 4:12-CV-1621, 2014 WL 1322979, at *3.

---

[3] STATE BAR OF TEXAS, Find a Lawyer, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=334635 (page last visited July 19, 2022).

[4] STATE BAR OF TEXAS, 2015 HOURLY FACT SHEET (2015), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (page last visited July 19, 2022).

9

Ebele does not contest the requested hourly rate of $35 for administrative work performed by Weitz and typically performed by paralegals. The Court finds that this rate is also reasonable for the type of work performed.

**Spies**

Ebele does not contest the requested hourly rate of $135 for Spies as a paralegal. Myres's affidavit and the legal services agreement with Derek establishes that this is Spies's customary billing rate for the types of paralegal services rendered in this case. This rate is comparable to rates that courts in this circuit have found reasonable and customary. *See League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1235 (5th Cir. 1997); *see also Firth v. Don McGill of W. Houston, Ltd.*, No. CIV.A. H-04-0659, 2006 WL 846377, at *6 (S.D. Tex. Mar. 28, 2006); *Purdie v. Ace Cash Express, Inc.*, No. CIV.A. 301CV1754L, 2003 WL 22976611, at *9 (N.D. Tex. Dec. 11, 2003). The Court finds that this rate is also reasonable for the type of work that Spies performed.

Ebele does not contest the requested hourly rate of $35 for administrative work performed by Spies and is typically performed by a paralegal. The Court finds that this rate is also reasonable for the type of work performed.

### 2. Number of Hours Reasonably Expended

Next, the Court must determine whether the hours claimed were "reasonably expended" on the litigation; that is, whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended. *Louisiana*

10

*Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995); *League of United Latin American Citizens No. 4552 (LULAC)*, 119 F.3d at 1232. The fee applicant bears the burden of establishing the reasonableness of the number of hours expended on the litigation, *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990), and must present adequately documented time records to the court, *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). *See also Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) ("In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours.").

Parties submitting fee requests are also required to exercise "billing judgment," which "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours." *Walker v. United States HUD*, 99 F.3d 761, 769 (5th Cir. 1996). The plaintiff must present "documentation of the hours charged" and of those "written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d at 799 (5th Cir. 2006). "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Saizan*, 448 F.3d at 799. In other words, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Villegas v. Regions Bank*, No. CIV.A. H-11-904, 2013 WL 76719, at *4 (S.D. Tex. Jan. 4, 2013) (J. Rosenthal);

11

*Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC*, No. CIV.A. H-10-1568, 2012 WL 3234203, at *8 (S.D. Tex. Aug. 6, 2012) (reducing requested fees by 50%).

     Conducting a comprehensive review of the evidence of attorney's fees submitted, the Court finds that there is evidence of billing judgment exercised by Derek's attorneys. For example, on July 20, 2021, Weitz wrote off 2 hours of "Additional time drafting and revising affidavit" and on 07/27/2021 Weitz wrote off 1.5 hours of "Additional drafting petition to return child and research." (Dkt. 28-5 at 4). However, there is also some evidence of a lack of billing judgment in the billing records. For example, at the state court hearing on 8/24/2021, both Myres and Weitz were present and billed a total of 4.25 hours. There is no information in the record indicating the nature of the hearing or why having two attorneys appear at the hearing was necessary and not redundant. Some of the entries also lack sufficient detail for the Court to determine why certain work performed for the state proceedings had to be performed again for the hearing in this court.

     There are also examples of "block billed" entries that combine multiple activities into a single entry. Block billing is a time-keeping method where an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 n.9 (10th Cir. 1998). When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task and is hindered in determining whether the hours billed are reasonable. Such entries often fail to satisfy the criteria for supporting an attorneys' fee application. *See Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp.

12

2d 847, 865 n.25 (S.D. Tex. 2011) An example of this is seen in an entry dated 8/26/2021 reflecting 9.0 hours for "[c]ourt appearances; testimony; drafting and a multitude of emails throughout the day on UCCJEA enforcement hearing and emails and communications into the evening." (Dkt. 28-5 at 9).

While block billing creates impediments to the analysis of the attorney's fee bill, the Supreme Court has indicated that it is not a basis for refusing to award attorney's fees. *Hensley*, 461 U.S. at 437 n.12. The method most often used to compensate for block billing is a flat reduction of a specific percentage from the award. *See, e.g.*, *Canon U.S.A., Inc. v. S.A.M., Inc.*, No. CIV A 07-1201, 2009 WL 35334, at *5 (E.D. La. Jan. 6, 2009). The Court finds that that the block billing entries make up a small relative percentage of the billing entries and that, based on its experience regarding the work performed, the majority of time submitted in block billing format was reasonable. *See Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *6 (S.D. Tex. Sept. 2, 2016).

After a careful review of the record, for the reasons noted above the Court finds that a 20% reduction of the hours sought is warranted to substitute for the exercise of billing judgment, account for redundant work and account for block billing that impeded the Court's ability to access whether the amounts incurred were reasonable and necessary. Accordingly, the Lodestar is calculated as follows:

13

| Attorney | Rate | Hours with 20% Reduction[5] | Total |
|---|---|---|---|
| Susan Myres | $500 | 45.75 | $22,875 |
| | $35 | 1 | $35.00 |
| Becca Weitz | $300 | 21.5 | $6,450 |
| | $35 | 4.5 | $157.50 |
| Elizabeth Spies | $135 | 23 | $3,105 |
| | $35 | 4.5 | $157.50 |
| | **Total** | | **$32,780** |

**4. Adjustment of the Lodestar**

There is a strong presumption that the lodestar is reasonable, and it should be modified only in exceptional cases. *Watkins*, 7 F.3d at 458 (citing *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)). When deciding whether to make an adjustment to the lodestar, the Court considers the *Johnson* factors. *Johnson v. Georgia Highway Express, Inc*, 488 F.2d 714, 717-19 (5th Cir. 1974). The most critical factor in the analysis is the "degree of success obtained." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). Moreover, some of the factors are often subsumed in the initial lodestar calculation; therefore, the Court does not reconsider factors that were already considered during the initial lodestar calculation when deciding whether to adjust the lodestar. *Id.*

---

[5] Myres & Associates bills its time in quarter-hour increments. (Dkt. 28-5) Thus, the Court has rounded the reduced hours to the nearest quarter-hour.

14

The Court has carefully considered each of the *Johnson* factors as applied to this case and determines that they are considered and accurately reflected in the lodestar. Having considered the strong presumption of the reasonableness of the lodestar the Court concludes that no adjustment to the lodestar is necessary.

## B. Costs & Expenses

### 1. Miscellaneous Attorney Expenses

Derek seeks $908.74 in reimbursement for miscellaneous attorney expenses evidenced by the law firm billing records and affidavit from his attorneys. These expenses are listed below:

| | | | |
|---|---|---|---|
| 07/31/21 | Expense | Printing B&W | $0.20 |
| 08/05/21 | Expense | eFile TX : Filing - Petition - Petition for the Return of the Child to Petitioner with Request for Ex Parte Temporary R | $296.32 |
| 08/09/21 | Expense | eFile TX : Filing - No Fee Documents - Civil Process Request | $11.32 |
| 08/10/21 | Expense | Research | $3.00 |
| 08/16/21 | Expense | Rush Citation | $170.00 |
| 08/17/21 | Expense | eFile TX : Filing - No Fee Documents - Return of Service | $3.09 |
| 08/18/21 | Expense | Postage | $7.47 |
| 08/19/21 | Expense | eFile TX : Filing - No Fee Documents - Motion to Extend Temporary Restraining Order | $3.09 |
| 08/20/21 | Expense | Courier Fee | $18.00 |
| 08/23/21 | Expense | eFile TX : Filing - No Fee Documents - Alternative Petition for Expedited Enforcement of Child Custody Determination | $3.09 |
| 08/24/21 | Expense | Filing Fee | $3.34 |
| 08/26/21 | Expense | Filing Fee | $3.34 |
| 08/27/21 | Expense | eFile TX : Filing - Proposed Order - Order for Issuance of Writ of Attachment | $3.09 |
| 08/27/21 | Expense | Filing Fee | $3.34 |
| 08/31/21 | Expense | Printing (Color) | $13.00 |
| 08/31/21 | Expense | Printing (B&W) | $105.30 |
| 09/09/21 | Expense | Travel Expense to Hearing | $19.06 |
| 09/09/21 | Expense | Travel Expense from Hearing | $16.34 |
| 09/10/21 | Expense | Travel Expense from Hearing | $21.08 |
| 09/10/21 | Expense | Travel Expense to Hearing | $25.47 |
| 09/30/21 | Expense | Printing B&W | $69.00 |
| 09/30/21 | Expense | Printing B&W | $109.60 |
| 09/30/21 | Expense | Scanning B&W | $1.20 |
| | | | $908.74 |

(Dkt. 28-5).

15

Filing fees and citation costs are generally recoverable and Derek has established that he is entitled to recover these expenses in the requested amount. *See e.g.* Alanis v. Reyes, No. 3:16-CV-00268-GHD-RP, 2017 WL 1498252, at *2 (N.D. Miss. April 24, 2017). Likewise Derek has established that the copy expenses were necessary for use in this case and they are recoverable in the amount of $296.50. *See e.g. Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991).

The Court finds that Derek has not demonstrated the necessity of the other miscellaneous fees for research, courier services, and attorney travel expense to and from hearings. Costs for legal research may be a "necessary expense[] incurred" and are therefore sometimes awardable under the ICARA *See* 42 U.S.C. § 11607(b)(3). However, because Derek has provided no explanation as how or why this research was conducted, who conducted the research or even what type of research this was, the Court cannot ascertain its necessity and will disallow these amounts.

The Court will also disallow the amounts for courier fees and postage because it is unable to determine the necessity of the courier fees or what the postage was used for. Several court in the Fifth Circuit, including this Court, have held that postage is not recoverable. *See Smith v. Jaco*, No. 2:12-CV-00075-GHD, 2015 WL 2168892, at *2 (N.D. Miss. May 7, 2015); *Kmart Corp. v. Kroger Co.*, No. 1:11-CV-00103-GHD, 2014 WL 3510488, at *10 (N.D. Miss. July 14, 2014); *Ducote Jax Holdings, L.L.C. v. Bank One Corp.*, No. 04-1943, 2007 WL 4233683, at *6 (E.D. La. Nov. 28, 2007); *Noel Studio, Inc. v. Ewell*, No. 4:06-CV-208, 2006 WL 3317095, at *2 (E.D. Tex. Oct. 30, 2006); *Auto Wax*

16

*Co. v. Mark V Prods., Inc.*, No. 3:99-CV-982-M, 2002 WL 265091, at *5 (N.D. Tex. Feb. 22, 2002); *Migis v. Pearle Vision, Inc.*, 944 F. Supp. 508, 518 (N.D. Tex. 1996). Finally, the Court finds that there is not sufficient detail or documentation as to attorney travel expenses to find these costs were necessary for the prosecution of Derek's application. Accordingly, the Court will not permit these costs to be recovered.

After a detailed analysis of the entire record and based on the Court's knowledge of the expenses required to prosecute similar cases, the Court finds miscellaneous expenses in the amount of **$802.70** are reasonable and necessary and should be awarded.

### 2.  Transportation Expenses

ICARA provides for the recovery of reasonable and necessary transportation and lodging costs incurred for the return of the child to a custodian. *See e.g. In re Application of Stead v. Menduno*, 77 F. Supp. 3d 1029, 1038 (D. Colo. 2014). *See also Salazar v. Maimon,* No. 4:11-cv-4186, 2013 U.S. Dist. LEXIS 189643, at *36 (S.D. Tex. Mar. 26, 2013) ("Lodging and transportation expenses, if reasonable and related to the litigation," are recoverable under ICARA.) "Derek submitted a table titled "Derek Homer's Travel Expenses" which listed his expenses consisting of airline tickets for him and S.C.H., required COVID tests for international travel to and from Sweden, taxi rides and lodging expenses for two nights in Houston. After careful examination of the documents supporting this summary, the Court finds that these expenses were reasonable and necessary for S.C.H.'s return to Derek and are recoverable in the amount of **$3,330.95**.

### 3.  Karlsson's Fees

17

As part of his expenses Derek seeks to recover all of the attorney's fees paid to Karlsson in Sweden during the time his applications were pending in state court and this court because she "assisted in all matters related to the Texas case." (Dkt. 28 at 3). However, the Court finds that most of fees claimed were not necessary or properly documented and therefore not recoverable. Karlsson did not serve as an attorney in this action. She is not licensed as a lawyer in the United States and therefore, was not counsel of record and did not appear in any proceeding before this court or the state court. Nor is there any attempt by Derek to segregate what services Karlsson provided were primarily for proceedings in Sweden as opposed to specifically for his application in this country. Some of Karlsson's entries appear to be for the same or similar work performed by Derek's U.S. attorneys. Furthermore, a number of Karlsson's entries are for administrative tasks such as interpreting documents and there is no explanation as to why this was done at her attorney billing rate when such tasks do not require legal training.

However, a portion of her fees are recoverable as expert expenses. ICARA permits the recovery of expert fees and expenses, regardless of whether the expert testifies in court as long as those expense are also "necessary" and "not clearly inappropriate." *Mertens v. Kleinsorge-Mertens*, 2016 U.S. Dist. LEXIS 105050, at *8 (D.N.M. June 8, 2016). During both hearings the Court held in this case, Karlsson, as an expert on Swedish law, appeared on Zoom by video and provided valuable testimony and assistance to the Court that was necessary for reaching its decision. Among other things, Karlsson assisted the Court in understanding the Swedish court system and the various orders entered in the underlying

18

custody dispute in Sweden. Given the issues raised by Derek's application, it was appropriate for Derek to retain Karlsson to provide this testimony to the Court. Accordingly, based on the Court's review of Karlsson's time records for the time she spent preparing and providing expert testimony and her resume, the Court finds that Derek is entitled to recover $1,072 calculated as 8 hours at Karlsson's hourly rate of $134 as expert witness expenses. [6]

### Equitable Considerations and the "Clearly Inappropriate" Inquiry

Respondent-oriented concerns are also part of this court's assessment of a proper fee award. The statute's use of "clearly inappropriate" indicates that the statute does not change the fundamentally equitable nature of cost awards. *See Ozaltin*, 708 F.3d at 375 (citation omitted). Given the statute's inherently equitable nature, "equitable discretion should be exercised in light of the [relevant] considerations." *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation marks omitted)). Relevant considerations in ICARA fee awards include past domestic abuse, *Guaragno v. Guaragno*, 2010 WL 5564628, at *2-3 (N.D. Tex. Oct. 19, 2010), whether a full fee award would leave a respondent-parent with a "straitened" financial condition from caring for her child, *Montero-Garcia v. Montero*, No. 3:13-CV-00411-MOC, 2013 WL 6048992, at *4 (W.D.N.C. Nov. 14, 2013) (collecting cases), and the respondent's good-faith belief that his actions were legal. Courts have discretion under ICARA to significantly reduce or even

---

[6] For purposes of calculation of Karlsson's rate the Court takes judicial notice of current currency exchange rates as of the date of this order.

eliminate a respondent's obligation to pay a prevailing petitioner's attorney's fees and costs where such an award would be clearly inappropriate. *See, e.g., Silverman v. Silverman*, No. CIV.00-2274 JRT, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) (eliminating fee where respondent had no ability to pay, and prevailing petitioner did not abide by prior court orders, had failed to support children financially in the past, and had been physically and mentally abusive to respondent); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing award by 15% in light of respondent's financial condition and because awarding full fee would unduly limit respondent's ability to support his children); *Willing v. Purtill*, No. CIV. 07-1618-AA, 2008 WL 299073, at *1 (D. Or. Jan. 31, 2008) (reducing fee award by 15% due to respondent's financial circumstances, particularly his unemployment). The respondent, not the movant. bears the burden of demonstrating that a fee award is clearly inappropriate.

The Court begins by noting that Ebele's response fails to cite any case interpreting or applying the statute in support of an argument that there is an equitable basis for reducing the award of fees and costs. For example, Ebele's response does not provide any evidence regarding her financial condition, employment status or other evidence that courts have used as an equitable basis to reduce an award. *See id.*[7]  Instead, Ebele globally argues that the total amount of fees and costs requested are "patently not reasonable." In support of this argument Ebele alleges that her attorneys notified Derek's counsel on August 20, 2021

---

[7] Courts have found similar deficiencies to mandate very harsh results. *See, e.g., Paulus ex rel. P.F.V. v. Cordero*, 2013 WL 432769, at *9 (M.D. Pa. Feb. 1, 2013) (mother with minimum wage salary and two dependent children responsible for $36,990 in fees because respondent "failed to provide any evidentiary support for her allegations of "financial strain").

20

that they would be removing the state filed action to federal court. Ebele argues despite this notice, Derek's attorneys "went forward, sought and appeared at three (3) hearings in state district court in this matter." Thus, Ebele argues that Derek's costs and expenses incurred regarding state court proceedings after August 20th were "not necessary" and "legally inappropriate" and should not be awarded. Even if Ebele's allegations regarding notice are true, the Court finds this argument unpersuasive.

The state district court had jurisdiction over Derek's applications until Ebele's counsel removed the case to federal court. Regardless of whether Derek or his counsel believed what Ebele's counsel said regarding her intent to remove the case to federal court—and the record provides multiple bases for them to disbelieve that assertion—they rightfully pursued the case in state court while that court had jurisdiction over the matter. Furthermore, Ebele's counsel chose to wait until *after* the state district court had scheduled and initiated proceedings on Derek's applications to remove the case. At that point, the state district court was so concerned about the possibility that Ebele would remove the child from the jurisdiction that it proceeded with the second day of hearing out of an abundance of caution, despite Ebele's representations that the case had been removed to federal court. Under these circumstances, the Court cannot fault or penalize Derek's counsel for proceeding in state court absent an order from this Court to proceed in this forum.

The Court finds that the award requested is not "patently unreasonable." Many courts have approved ICARA fee awards in excess of $20,000. *See, e.g., Salazar v.*

21

*Maimon*, 750 F.3d 514, 523 (5th Cir. 2014) (approximately $39,000); *Neves v. Neves*, 637 F. Supp. 2d 322, 347-48 (W.D.N.C. 2009) (approximately $40,000); *Wasniewski v. Grzelak-Johannsen*, 549 F. Supp. 2d 965, 980-81 (N.D. Ohio 2008) (approximately $118,000 for district court proceeding and subsequent appeal). Rather than warranting a reduction, the equities in this case suggest that the Court award the full amount of Derek's reasonable and necessary fees and costs. At the hearing the Court received credible evidence that Ebele repeatedly fabricated unsupported claims of child abuse by Derek to justify Swedish courts and this court taking the child away from him. The record establishes that these allegations resulted in considerable time and expense to Derek in his custody litigation in Sweden. Accordingly, the Court finds that there is no basis in equity to reduce the fee and expense award in this case.

## CONCLUSION

Based on the foregoing reasons, it is hereby **ORDERED** Derek's Motion for Attorney Fees and Costs is **GRANTED in part and DENIED in part**. Derek is awarded **$32,780 in fees and $5,205.65 in expenses**.

22

| Name | Rate | Billable Hours | Total Amount |
|---|---|---|---|
| Attorney Myres | $500 | 45.75 | $22,875 |
| Attorney Myres | $35 | 1 | $35.00 |
| Attorney Weitz | $300 | 21.5 | $6,450 |
| Attorney Weitz | $35 | 4.5 | $157.50 |
| Paralegal Spies | $125 | 23 | $3,105 |
| Paralegal Spies | $35 | 4.5 | $157.50 |
| Expenses | | | $5,205.65 |
| | | **TOTAL:** | **$37,985.65** |

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, this 16th day of September, 2022.

George C. Hanks Jr

GEORGE C. HANKS, JR.

UNITED STATES DISTRICT JUDGE

23